In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-03-00054-CR


______________________________




DANIEL RAY ELLIOTT, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 115th Judicial District Court


Upshur County, Texas


Trial Court No. 12,133




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Ross



MEMORANDUM OPINION



 Daniel Ray Elliott has filed an appeal from the revocation of his community
supervision. Elliott was represented at trial by retained counsel and is represented on
appeal by different, appointed counsel. At the revocation proceeding, Elliott entered a plea
of true to a violation of his community supervision and the court revoked his community
supervision and sentenced him to ten years' imprisonment.

 Counsel states in his brief he has reviewed the record in detail and it is his
professional opinion no reversible error is reflected by the record. He has also, however,
set out two grounds of error that might arguably support an appeal. (1) On June 13, 2003,
counsel also provided a copy of the brief and the clerk's and reporter's records to Elliott,
along with a letter informing Elliott of his right to file a brief pro se. Accordingly, counsel
also filed a motion asking for permission to withdraw from representation of Elliott. No
pro se response has been filed, and Elliott has not contacted this Court in connection with
the preparation of a response.

 In his first arguable ground of error, counsel points out that, although the order of
revocation states Elliott violated four separate conditions of his community supervision,
there is evidence to support such a finding only as to the one condition to which Elliott pled
true. Counsel's assertion is correct. The plea proceeding was extremely brief, and
revocation was ordered based solely on Elliott's plea of true to a violation of one condition
of community supervision. Thus, we order the order reformed to delete the trial court's
finding that Elliott violated conditions two, ten, and fifteen of his community supervision. 

 However, as recognized by counsel, the error does not justify reversal, because a
violation of a single community supervision condition is all that is required to support
revocation. Sanchez v. State, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980);
Gordon v. State, 4 S.W.3d 32, 35 (Tex. App.-El Paso 1999, no pet.); Stevens v. State, 900
S.W.2d 348, 350 (Tex. App.-Texarkana 1995, pet. ref'd).

 In his second arguable ground of error, counsel recognizes there is a conflict in the
dates reflected in the original judgment placing Elliott on community supervision, which was
then picked up by the later order revoking his community supervision. The indictment
stated that the underlying robbery offense occurred on or about April 20, 1997. The
judgment and the order of revocation both recite the date of commission of the offense as
April 20, 1998. 

 As also recognized by counsel, however, Elliott did not appeal from the underlying
judgment, and there is nothing to suggest that such an error would have any impact on the
present case or the revocation proceeding. 

 Counsel has filed a brief which reviews the trial and revocation proceedings in some
detail and sets out two arguable sources of error in which he suggests the trial court may
have abused its discretion by revoking community supervision, but notes there are no
apparent grounds for reversal, thus meeting the requirements of Anders v. California, 386
U.S. 738 (1967). See High v. State, 573 S.W.2d 807 (Tex. Crim. App. [Panel Op.] 1978);
Currie v. State, 516 S.W.2d 684 (Tex. Crim. App. 1974). We agree.

 The judgment of the trial court, as reformed, is affirmed. 


 Donald R. Ross

 Justice


Date Submitted: September 5, 2003

Date Decided: September 8, 2003


Do Not Publish


1. Anders v. California, 386 U.S. 738 (1967); Ex parte Senna, 606 S.W.2d 329, 330
(Tex. Crim. App. 1980); see generally Johnson v. State, 885 S.W.2d 641, 646-47 (Tex.
App.-Waco 1994, pet. ref'd).


ception Locked="false" Priority="65" SemiHidden="false"
 UnhideWhenUsed="false" Name="Medium List 1"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00098-CR

                                                ______________________________

 

 

                                               CURTIS LEO WILLIAMS, Appellant

 

                                                                            V.

 

                                                 THE
STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 8th Judicial District Court

                                                           Hopkins County, Texas

                                                          Trial Court
No. 0819904

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley








                                                                   O P I N I O N

 

            Curtis Leo Williams, proceeding pro
se, appeals his conviction for possession of more than four grams but less than
200 grams of a controlled substance (cocaine), a second-degree felony.  See
Tex. Health & Safety Code Ann.
§
481.115(d) (West 2010).  The State
alleged two prior felony convictions, which elevated the punishment range to
not less than twenty-five years imprisonment and not more than ninety-nine
years or life imprisonment.  See Act of May 23, 1997, 75th Leg., R.S., ch.
665, 1997 Tex. Gen. Laws 2247, 2248 (amended 2011) (current version at Tex. Penal Code Ann. §
12.42 (West 2011)).  In a companion case[1] (also decided today), Williams
was convicted of the state-jail felony of possession of more than four ounces,
but less than five pounds of marihuana, also a controlled substance.  See
Tex. Health & Safety Code Ann.
§
481.121(b)(3) (West 2010).  In relation
to the other conviction, the State alleged two prior felony convictions, which
elevated the punishment range to a second-degree felony.  See
Act of May 29, 1995, 74th Leg., R.S., ch. 318, § 1,
1995 Tex. Gen. Laws 2734, 2735 (amended 2011) (current version at Tex. Penal Code Ann. §
12.42 (West 2011)).

            The genesis of these charges arose
as the result of a traffic stop during which the drugs were discovered.  Williams, who had previously been declared
indigent and had been appointed counsel, appeared at a pretrial hearing on
February 26, 2010, wherein Williams appeared with recently-retained counsel,
who requested a continuance.  The trial
court (after noting the case was over two years old, had been set for trial,[2] and was the only case on his
docket that was ready to be tried) refused to grant Williams oral motion for a
continuance, whereupon retained counsel announced that he could not be prepared
for trial and declined to appear further.  The trial court then denied Williams
appointed counsels oral motion to withdraw.[3]  

            Williams and his appointed counsel
appeared on March 2, 2010, for jury selection, and Williams entered a plea of
not guilty.  On March 9 and 10,
Williams apparently deliberately absented himself and was tried in
absentia.  The jury found Williams
guilty, found both enhancements to be true, and assessed punishment at
sixty-three years imprisonment for the possession of cocaine charge and seven
years imprisonment for the possession of marihuana charge.  The trial court sentenced Williams consistent
with the jurys assessment on May 26, 2010. 
Williams appealed and elected to proceed pro se on appeal.

(1)        The
Evidence Is Sufficient

            Williams challenges the legal and
factual sufficiency[4] of the evidence.  To the best that we can discern,[5] Williams argues that the
State failed to establish the controlled substance contains adulterants or dilutants and that some form of a material variance exists.

            In evaluating legal sufficiency, we
review all the evidence in the light most favorable to the trial courts
judgment to determine whether any rational jury could have found the essential
elements of the offense beyond a reasonable doubt.  Brooks,
323 S.W.3d at 912 (citing Jackson v.
Virginia, 443 U.S. 307, 319 (1979)); Hartsfield
v. State, 305 S.W.3d 859, 863 (Tex. App.Texarkana 2010, pet. refd).  Our rigorous
legal sufficiency review focuses on the quality of the evidence presented.  Brooks,
323 S.W.3d at 917 (Cochran, J., concurring). 
We examine legal sufficiency under the direction of the Brooks opinion, while giving deference
to the responsibility of the jury to fairly resolve conflicts in testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 31819); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).

            Williams argues, when the State
attempts to obtain conviction for Possession offense on theory that aggregate
weight of controlled substance, including adulterants and dilutants,
is over 4 grams it must
first prove existance [sic] of any adulterants and
then show that controlled substance weighs more than 4 grams.  In support of this argument, Williams cites Benoit v. State, 561 S.W.2d 810, 815
(Tex. Crim. App. 1977), overruled on
other grounds by Harrison v. State, 187 S.W.3d 429, 433 (Tex. Crim. App.
2005).  In the thirty years since Benoit, the Texas Health and Safety Code
has been amended.[6]  The Texas Court of Criminal Appeals has noted
[u]nder the new Health and Safety Code definition,
the State is no longer required to determine the amount of controlled substance
and the amount of adulterant and dilutant that
constitute the mixture.  Melton v. State, 120 S.W.3d 339, 344
(Tex. Crim. App. 2003).  Rather, [t]he
State has to prove only that the aggregate weight of the controlled substance
mixture, including adulterants and dilutants, equals
the alleged minimum weight.  Id. 


            Williams also alleges a material
variance exists between the indictment and the evidence at trial.  Williams does not attempt to specify the
material variance he alleges.  A variance
exists when there is a discrepancy between the allegations in the charging
instrument and the proof at trial.  In re S.C., 229 S.W.3d 837, 841 (Tex.
App.Texarkana 2007, pet. denied).

            The Texas Court of Criminal Appeals
has held that evidentiary sufficiency should be measured against a
hypothetically correct jury charge.  See Gollihar v.
State, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  Malik controls even in the absence of alleged jury charge
error.  Gollihar, 46 S.W.3d at 255.  A hypothetically correct jury charge is
one that accurately sets out the law, is authorized by the indictment, does
not unnecessarily increase the States burden of proof or unnecessarily
restrict the States theories of liability, and adequately describes the
particular offense for which the defendant was tried.  Malik, 953 S.W.2d at 240.  The hypothetically correct jury charge must
include both (1) allegations that form an integral part of an essential element
of the offense, including allegations that are statutorily alternative manner
and means and (2) material variances.  Clinton v. State, 327 S.W.3d 366, 36869
(Tex. App.Texarkana 2010, pet. granted); see
Gollihar, 46 S.W.3d at 256.  When determining whether a variance is
material, we must consider two questions:  1) whether the indictment, as written,
informed the defendant of the charge against him or her sufficiently to allow
such defendant to prepare an adequate defense at trial, and 2) whether
prosecution under the deficiently drafted indictment would subject the
defendant to the risk of being prosecuted later for the same crime.  Mantooth v. State,
269 S.W.3d 68, 76 (Tex. App.Texarkana 2008, no pet.).

            Our review has not revealed any
variances concerning the charged offense between the indictment and the
evidence presented at trial.  The
indictment in this case alleged that Williams did intentionally and knowingly
possess a controlled substance, namely, Cocaine, in an amount of four grams or
more but less than 200 grams.  In the
companion case, the indictment alleged Williams did intentionally and
knowingly possess a useable quantity of Marihuana in an amount of five pounds
or less but more than four ounces.  The
State introduced sufficient evidence establishing these allegations.  Williams was the driver of the vehicle in
which the illicit drugs were located and the vehicles sole occupant.[7]  The cocaine was discovered in a clear,
plastic baggie which was stuck between the console and the drivers
seat.  The marihuana was found in a
Wal-Mart bag on the floorboard of the back seat.  Clavian Cloud, III,
a chemist with the Texas Department of Public Safety, identified the substances
as cocaine and marihuana, testified the cocaine weighed 24.68 grams, and
testified the marihuana weighed 2.88 pounds. 
A rational juror could have concluded, beyond a reasonable doubt, that
Williams was guilty of possession of cocaine and possession of marihuana as
alleged in the indictments.

(2)        The
Record Contains Sufficient Evidence to Support the Enhancements

            In our review of the enhancements,
we noticed one of the prior Tennessee convictions has two different dates for
entry of the judgment.  Count 1 and Count
2 of cause number IF7268 both state, Comes the District Attorney General for
the State and the defendant with counsel of record for entry of judgment.  On the  7  day of  FEB , 19  95 , the defendant . . . , but the Date
of Entry of Judgment is 3/23/95. 
Williams has failed to provide this Court with any authority concerning
whether, in Tennessee, the conviction occurs upon oral pronouncement or when
the trial court signs the judgment. 
Regardless, the variance, if any, would be immaterial.[8]  Both indictments allege identical
enhancements as follows:

And
it is further presented in and to said Court that, prior to the commission of
the aforesaid offense, on the 17th day of April, 2002, in Cause No.
2001-B-963, in the 20th Judicial District Criminal Court of Davidson
County, Tennessee, the defendant was convicted of the felony of Possession
With Intent To Sell; and on the 23rd Day of March, 1995, in Cause
No. IF7268 Count 1, in the 20th Judicial District Criminal Court
of Davidson County, Tennessee, the defendant was convicted of the felony
of Possession Of Cocaine; and on the 23rd day of March, 1995, in Cause
No. IF7268 Count 2, in the 20th Judicial District Criminal Court
of Davidson County, Tennessee, the defendant was convicted of the felony
of Possession Of Weapon.

 

            Regardless of whether one views a
variance as a sufficiency of the evidence problem or as a notice-related
problem, a variance that is not prejudicial to a defendants substantial
rights is immaterial.  Hart v. State, 173 S.W.3d 131, 144 (Tex.
App.Texarkana 2005, no pet.).  Whether a
defendants substantial rights have been prejudiced depends on:  (1) whether the indictment, as written,
informed the defendant of the charge against him sufficiently to allow such
defendant to prepare an adequate defense at trial; and (2) whether prosecution
under the deficiently drafted indictment would subject the defendant to the
risk of being prosecuted later for the same crime.  Brown
v. State, 159 S.W.3d 703, 709 (Tex. App.Texarkana 2004, pet. refd).

            First, it is important to note it is
not necessary to allege enhancement convictions with the same particularity
which must be used in charging on the primary offense.  Freda
v. State, 704 S.W.2d 41, 42 (Tex. Crim. App. 1986); Chavis v. State, 177 S.W.3d 308, 312 (Tex. App.Houston [1st Dist.] 2005,
pet. refd).  With
the exception of the date, the allegations identifying the offense, the cause
number, and the court are correct.  There
is no evidence in this record (1) that the variance stated in the date on the
enhancement conviction prevented Williams from identifying the conviction and
preparing a defense or (2) that the variance would subject Williams to the risk
of being prosecuted later for the same crime.  The variance in the date, if any, is not
material and, therefore, need not be included in the hypothetically correct
jury charge.  Under the hypothetically correct
jury charge, the evidence is sufficient to support the jurys conclusion that
the enhancement was true.

            Williams also complains that the
State failed to prove that the enhancement offenses (which were convictions in
the State of Tennessee) were substantially similar to Texas offenses.  We note that certain enhancements under
Section 12.42(c)(2) require evidence that certain convictions not under the Texas
Penal Code be substantially similar to specific offenses under the Texas
Penal Code.  See Tex. Penal Code Ann.
§
12.42(c)(2).  Williams, though, was not
charged under Section 12.42(c)(2).  For
the cocaine offense, the State alleged enhancements under former Section
12.42(d).  See Act of May 23, 1997, 75th Leg., R.S., ch.
665, 1997 Tex. Gen. Laws 2247, 2248 (amended 2011) (current version at Tex. Penal Code Ann. §
12.42 (West 2011)).  For the possession
of marihuana offense, the State alleged enhancements under former Section
12.42(a)(2).  See Act of May 29, 1995, 74th Leg., R.S., ch.
318, § 1,
1995 Tex. Gen. Laws 2734, 2735 (amended 2011) (current version at Tex. Penal Code Ann. §
12.42 (West 2011)).  For these sections,
the relevant inquiry is whether another state chose to classify the offense as
a felony.  See Tex. Penal Code Ann.
§ 12.41 (West 2011);[9] Tucker v. State, 136 S.W.3d 699, 701 (Tex. App.Texarkana 2004, no
pet.).  

            The State established the prior
offenses were felonies under Tennessee law. 
The State introduced pen packets from Tennessee, including the
judgments for the convictions alleged. 
These judgments reflect that each of the convictions were considered
felonies under Tennessee law.[10]  Robert Stidham, an
Assistant Chief with the Sulphur Springs Police
Department, testified that Williams fingerprints matched the fingerprints on
the pen packets.  The evidence was
sufficient to support the enhancements.

(3)        Section
12.46 Permits Multiple Use of Prior Felony Convictions

            Williams complains that the State
cannot use the same prior felony convictions to enhance both counts, citing Ex parte Williams, 571 S.W.2d 26, 27
(Tex. Crim. App. 1978), superseded by
statute as stated in Ex parte Bonham, 707 S.W.2d 107, 108 (Tex. Crim. App.
1986).[11]  In 1979, the Legislature enacted Section
12.46 of the Texas Penal Code, which provides, The use of a conviction for
enhancement purposes shall not preclude the subsequent use of such a conviction
for enhancement purposes.  Tex. Penal Code Ann. §
12.46 (West 2011).  While under certain
circumstances multiple use of enhancements may be limited, Williams has failed
to provide this Court with authority that an exception to this general rule
applies in this case and we are unaware of any such authority.  Williams complaint is overruled.

(4)        We
Must Presume Venue Was Established

            Williams argues that the State
failed to prove the charged offense occurred in Hopkins County.  Although Williams argues that this failure
was jurisdictional, Williams argument concerns venue and not the trial courts
subject-matter jurisdiction.  Venue is
distinct from jurisdiction; jurisdiction is the authority or power conferred
upon a court by the constitution and laws of Texas that allows a court to hear
and try a case, whereas venue means the place where the case may be tried.  State
v. Blankenship, 170 S.W.3d 676, 681 (Tex. App.Austin 2005, pet. refd).  We begin by
noting that venue is not an element of the offense.  Fairfield
v. State, 610 S.W.2d 771, 779 (Tex. Crim. App. [Panel Op.] 1981); Blankenship, 170 S.W.3d at 681.  Thus, venue must be proved by only a
preponderance of the evidence and is not required to be proved beyond a
reasonable doubt.  See Tex. Code Crim. Proc.
Ann. art. 13.17 (West 2005); Murphy
v. State, 112 S.W.3d 592, 604 (Tex. Crim. App. 2003).  When reviewing venue, we view all of the
evidence in the light most favorable to an affirmative venue finding and ask
whether any rational trier of fact could have found
by a preponderance of the evidence that venue was proved.  VanSchoyck v. State,
189 S.W.3d 333, 336 (Tex. App.Texarkana 2006, pet. refd).

            Under Rule 44.2 of the Texas Rules
of Appellate Procedure, we must presume venue has been proven in the trial
court unless either the record affirmatively shows otherwise or if venue was
disputed in the trial court.  Tex. R. App. P. 44.2(c)(1).  A plea of not guilty is not sufficient to
dispute venue in the trial court.  Holdridge v. State, 707 S.W.2d 18, 2021 (Tex.
Crim. App. 1986) (en banc).  Williams has
not directed this Court to where venue was contested in the trial court.  Our review of the record revealed neither any
evidence affirmatively contesting venue, nor did Williams request a directed
verdict based on venue.  Therefore, the
issue is presumed proven at trial unless the record affirmatively shows
otherwise.  Tex. R. App. P. 44.2(c)(1). 


            The record does not affirmatively
show that venue was improper.  When asked,
[W]here in Hopkins County [were you] working that night, Lieutenant Buddy
Williams testified, I was west of town. 
Lieutenant Williams later testified he was located on the east-bound
side of Interstate 30 near mile marker 115, which is just the other side of Brashear
and explained by other side that he meant West side of Brashear.[12]  Lieutenant Williams testified he detained
Williams at approximately mile marker 119. 
Because Williams did not challenge venue in the trial court and the
record does not affirmatively show that venue does not exist in Hopkins County,
we overrule Williams argument that the State failed to establish venue.

(5)        The
Indictment Is Not Void 

            Williams argues that the indictment
is void because it fails to allege essential elements of the offense.  Other than the failure to allege the amount
of the controlled substance in the mixture of controlled substance and
adulterants and dilutants (which we have already
noted is no longer required), Williams does not specify what essential element
has been omitted.  In support of his
argument, Williams cites the following cases: 
Benoit, 561 S.W.2d at 814; Labelle v. State, 720 S.W.2d 101, 106
(Tex. Crim. App. 1986); Ex parte
Childress, 732 S.W.2d 642, 643 (Tex. Crim. App. 1987); Duron v. State, 956 S.W.2d 547 (Tex. Crim. App. 1997).  The State does not respond to this argument
in its brief.[13]

            Williams argues that the failure to
allege an essential element of the offense is a defect of substance and renders
the indictment void.  In 1985, Texas
voters approved an amendment to Section 12 of Article V to the Texas
Constitution, which provides that the presentation of an indictment or
information vests the trial court with jurisdiction over the case.  See
Tex. Const. art. V, § 12; see also Studer v.
State, 799 S.W.2d 263, 272 (Tex. Crim. App. 1990).  A defendant waives any defect of form or
substance in an information if an objection is not made before the date trial
commences.  See Tex. Code Crim. Proc.
Ann. art. 1.14(b) (West 2005); Teal
v. State, 230 S.W.3d 172, 177 (Tex. Crim. App. 2007).  By failing to object before trial, Williams
has waived any defect of form or substance, if any exists.

            We note that an instrument which is
not an indictment under Article V, Section 12 to the Texas Constitution fails
to vest the trial court with jurisdiction and can be raised for the first time
on appeal.  See Teal, 230 S.W.3d at 178; Duron, 956 S.W.2d at 555 (Womack,
J., concurring); Cook v. State, 902
S.W.2d 471, 47980 (Tex. Crim. App. 1995). 
The omission of an element of the offense, though, does not prevent the
instrument from being a charging instrument. 
The charging instrument must charge:  (1) a person (2) with the commission of an
offense over which the trial court has subject-matter jurisdiction.  Teal,
230 S.W.3d at 181.  [A] written
instrument is an indictment or information under the Constitution if it accuses
someone of a crime with enough clarity and specificity to identify the penal
statute under which the State intends to prosecute, even if the instrument is
otherwise defective.  Duron, 956 S.W.2d
at 55051.  Because the information is
sufficient to identify the penal statute under which the State intended to
prosecute and that offense is one which the trial court had subject-matter
jurisdiction,[14] the indictment is not void.

(6)        The
State Provided Sufficient Notice of Enhancements 

            Williams also argues, in his second
point of error, that the State failed to provide sufficient notice of the
enhancements.  Williams argues that such
notice is required to be provided in the indictment.  The State does not respond to this argument
in its brief.  

            We first note that while the State
is permitted to provide notice of enhancements in an indictment, the State is
not required to do so.  Brooks v. State, 957 S.W.2d 30, 34 (Tex.
Crim. App. 1997) (enhancements must be pled in some form, but they need not be
pled in the indictment).  

            Second, Williams was provided with
notice of both enhancements in the indictment. 
The indictment alleged as follows in pertinent part:

And
it is further presented in and to said Court that, prior to the commission of
the aforesaid offense, on the 17th day of April, 2002, in Cause No.
2001-B-963, in the 20th Judicial District Criminal Court of Davidson
County, Tennessee, the defendant was convicted of the felony of Possession
With Intent To Sell; and on the 23rd Day of March, 1995, in Cause
No. IF7268 Count 1, in the 20th Judicial District Criminal Court
of Davidson County, Tennessee, the defendant was convicted of the felony
of Possession Of Cocaine; and on the 23rd day of March, 1995, in Cause
No. IF7268 Count 2, in the 20th Judicial District Criminal Court
of Davidson County, Tennessee, the defendant was convicted of the felony
of Possession Of Weapon.

 

At
a pretrial hearing, the State made the following statement:

            [State]:  Well, I believe that there are -- while there
is not an adequate delineation of the paragraphs there, that should actually be
two separate paragraphs reflecting two separate pen trips.  And its also referenced that way in the
States file, which has been provided to Mr. Loyd.

 

            THE COURT:  Okay. 
Now lets make that clear.  What
are you saying there?

 

            [State]:  That there are -- there should be two
paragraphs there.  As written, it appears
that it is one paragraph.  My point,
Judge, was that, although its not presented properly in the indictment, we
intend to give Mr. Loyd notice that there are, in fact,
two pen trips, which would make this fall into the habitual status.

 

While
the better practice would be to provide notice of each enhancement in a
separate paragraph, Williams has neither directed this Court to any authority
requiring each enhancement to be alleged in a separate paragraph, nor are we
aware of any such authority.  The
indictment provided Williams with adequate notice of the enhancements.  Williams argument is overruled.

(7)        Any
Error in Denying Williams Motions for Continuance Is Not Preserved

            In his third point of error,
Williams claims that the trial court erred in denying his motions for
continuance.  At the pretrial hearing on
February 26, 2010, Williams appointed trial counsel and Williams recently-retained
counsel orally[15] requested a
continuance.  Williams appointed trial
counsel argued that Williams refused to communicate with him, had expressed a
desire to retain counsel, and had a right to be represented by retained counsel
of his choice.  Williams retained
counsel informed the court he had been recently retained, had not been informed
the case had already been set for trial, and could not be ready for trial by
the trial setting.  The trial court
(noting the case was over two years old, set for trial the following Monday, and
the only case ready to be tried on his docket) refused to grant Williams oral
motion for a continuance and Williams appointed counsels oral motion to
withdraw.  Williams appointed counsel
later filed a written motion for continuance and a written motion to withdraw,
brought the motions to the trial courts attention immediately prior to voir dire and secured another adverse ruling.  Williams appointed trial counsel renewed his
requests on both motions immediately before trial and secured another adverse
ruling.  The State argues that this issue
has not been preserved for appellate review.

            Article 29.08 of the Texas Code of
Criminal Procedure provides that [a]ll motions for
continuance must be sworn to by a person having personal knowledge of the facts
relied on for the continuance.  Tex. Code Crim. Proc. Ann. art. 29.08
(West 2006).  The written motion for
continuance, although signed by Williams and his trial counsel, is not
sworn.  When a motion for continuance is
not sworn, error is not preserved for appellate review.  See Toliver v. State, 279 S.W.3d 391, 402 (Tex.
App.Texarkana 2009, pet. refd); Johnson v. State, 257 S.W.3d 778, 781
(Tex. App.Texarkana 2008, pet. refd) (motion in
writing, but not sworn); see also
Dewberry v. State, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999).  The error, if any, is not preserved for
appellate review.  

8)         The Trial Court Did Not Abuse Its
Discretion in Denying Williams Counsels Motion to Withdraw

 

            Williams argues that he was denied
his right to representation of counsel of his choice in violation of the Due
Process Clause and his Sixth Amendment right to counsel.  The Sixth and Fourteenth Amendments to the
United States Constitution guarantee that a person brought to trial in any
state or federal court shall be afforded the right to assistance of counsel.  Faretta v. California,
422 U.S. 806, 807 (1975).  We also note
that a criminal defendant has a right to be represented by retained counsel of
his choice.  See United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006); Powell v. Alabama, 287 U.S. 45, 53 (1932).  We review a trial courts denial of a motion
to withdraw for abuse of discretion.  King v. State, 29 S.W.3d 556, 566 (Tex.
Crim. App. 2000).

            Williams retained counsel was
unequivocal that he could not be ready for trial unless a continuance was
granted.  The trial court was not
required to delay the proceedings to accommodate Williams tardy decision to retain
counsel.  We further note that the trial
court did not bar Williams retained counsel from participating in the trial;
rather, appointed counsel was not permitted to withdraw.  At the hearing on counsels motion to
withdraw, the trial court, addressing Williams recently-retained counsel,
stated,

And,
so, Mr. Pink, I wont -- I mean, you can jump in the case if you want to, but I
understand where youre coming from. 
However, Im not going to allow this to defeat a court setting.

            I told you the last time we talked
about this that I cant let it defeat a court setting, and, if you get an
attorney, get them on board, and youve hired Mr. Pink at an impossibly late
time.

 

Pink,
Williams recently-retained counsel, stated that he would be ineffective
without a continuance and Pink did not thereafter appear for voir dire.  Before voir dire began, the court discussed the matter.  Williams informed the court, Mr. Pink
refused to substitute because he said today wasnt enough time to
prepare.  

            The United States Supreme Court has
recognized a number of limitations on the right to counsel of ones
choice.  A criminal defendant, while
entitled to representation of a retained attorney of his choice, is not
automatically entitled to a continuance.[16]  Without a continuance, Williams recently-retained
counsel declined to represent Williams. 
The United States Supreme Court has held the right to representation by
counsel of ones choice does not include representation by an attorney who
declines to represent the defendant.  See Wheat v. United States, 486 U.S.
153, 159 (1988).  A trial court is not
obligated to search for an attorney who meets with the approval of the accused
when appointing counsel for an indigent defendant.  Webb v.
State, 533 S.W.2d 780, 784 n.3 (Tex. Crim. App. 1976).  In general, personality conflicts and
disagreements concerning trial strategy do not form valid grounds for
withdrawal.  Butler v. State, 300 S.W.3d 474, 48485 (Tex. App.Texarkana  2009, pet. refd).  The trial court did not abuse its discretion
in denying Williams trial counsels motion to withdraw.  

(9)        The
Trial Court Did Not Err in Denying the Motion for Directed Verdict

            In his fourth point of error,[17] Williams argues that the
trial court erred in denying his motion for directed verdict.  In reviewing the denial of a directed verdict,
we look to the legal sufficiency of the evidence.  Todd v.
State, 242 S.W.3d 126, 136 (Tex. App.Texarkana 2007, pet. refd); Rice v. State,
195 S.W.3d 876, 879 (Tex. App.Dallas 2006, pet. refd);
Yarborough v. State, 178 S.W.3d 895,
903 (Tex. App.Texarkana 2005, pet. refd).  As discussed above, the evidence is
sufficient.  The trial court did not err
in denying the motion for directed verdict.

(10)      The
Trial Court Did Not Err in Denying Williams Motion to Suppress

            In his fourth and fifth points of
error, Williams complains that the trial court erred in denying his motion to
suppress.[18]  Although stating he do[es]
not argue the initial stop of 68 in a 65 was not probable cause for the stop in
and of itself, Williams argues, Officer Williams had no intention of filing
or submitting a citation to Appellan[t].  To the best we are able to discern, Williams
is arguing the initial detention was a pretext stop.  Williams also claims that the period of time
from the time of the initial stop to going to retrieve the dog was excessive
and the officer was not able to articulate some reason for the continued
detention.  Williams argues that the
police officers sole reason for bringing out the drug dog was Williams denial
of consent to a search.  The State did
not respond to this argument in its brief.

            We review the trial courts decision
on a motion to suppress evidence by applying a bifurcated standard of review
deferring to the trial courts determination of historical facts that depend on
credibility, but review de novo the trial courts application of the law.  Wiede v. State,
214 S.W.3d 17, 25 (Tex. Crim. App. 2007); see
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  The trial courts evidentiary ruling will be
upheld on appeal if it is correct on any theory of law that finds support in
the record.  Gonzalez v. State, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006); see Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990).  Generally, we
review de novo determinations of probable cause or reasonable suspicion after
granting deference to the trial courts determination of historical facts.  Guzman,
955 S.W.2d at 87; see Crain v. State,
315 S.W.3d 43, 49 (Tex. Crim. App. 2010).

            A defendant alleging a Fourth
Amendment violation bears the burden of producing some evidence that rebuts the
presumption of proper police conduct.  Amador v. State, 221 S.W.3d 666, 672
(Tex. Crim. App. 2007).  A defendant
meets his initial burden of proof by establishing that a search or seizure
occurred without a warrant.  Id. 
The burden then shifts to the State to prove that the search or seizure
was nonetheless reasonable under the totality of the circumstances.  Id.
at 67273.  An automobile may be searched
without a warrant if there is probable cause to believe there is contraband or
evidence of a crime concealed within the vehicle.  Chambers
v. Maroney, 399 U.S. 42, 48 (1970); Neal v. State, 256 S.W.3d 264, 282 (Tex.
Crim. App. 2008); Hernandez v. State,
867 S.W.2d 900, 907 (Tex. App.Texarkana 1993, no pet.).

            Texas does not follow the pretext
stop doctrine recognized by some states. 
A pretext stop refers to an objectively valid stop for an allegedly
improper reason such as desire to investigate that individual for a different
offense--i.e., an offense for which they do not have valid legal grounds to
stop or arrest.  Garcia v. State, 827 S.W.2d 937, 93940 (Tex. Crim. App. 1992). The
Texas Court of Criminal Appeals has rejected the pretext stop doctrine. See 
Crittenden v. State, 899 S.W.2d 668, 671 (Tex. Crim. App. 1995); Garcia, 827 S.W.2d 937.

            The United States Supreme Court in Terry v. Ohio announced a two-pronged
test for investigative detentions.  392
U.S. 1, 1920 (1968).  To determine the
reasonableness of an investigative detention, the court must inquire:  (1) whether the officers action was
justified at its inception; and, (2) whether it was reasonably related in scope
to the circumstances which justified the interference in the first place.  Davis
v. State, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997); see Terry, 392 U.S. at 1920.

            The police had ample reasonable
suspicion for the initial detention. 
Lieutenant Williams testified he detained Williams for get[ing] over across the center stripe and for speeding.  Both actions are violations of Texas traffic
laws.  See Tex. Transp. Code Ann.
§§
545.060, 545.351.352 (West 2011).  A law
enforcement officer may lawfully stop and detain a person for a traffic
violation committed in the presence of the officer.  Garcia
v. State, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); Zervos v. State, 15 S.W.3d 146, 151 (Tex. App.Texarkana 2000, pet. refd).  Lieutenant
Williams had sufficient reasonable suspicion for the initial detention.

            The police also had ample reasonable
suspicion to continue the detention past the initial stop.  A search which is reasonable at its inception
may violate the Fourth Amendment by virtue of its intolerable intensity and
scope.  Terry, 392 U.S. at 9.  An
investigative detention must also be temporary and last no longer than is
necessary to effectuate the initial purpose of the stop.  Florida
v. Royer, 460 U.S. 491, 500 (1983); Cisneros
v. State, 165 S.W.3d 853, 859 (Tex. App.Texarkana 2005, no pet.).  In a traffic stop, the police may ask for
identification, a valid drivers license, proof of insurance, and may check for
outstanding warrants.  Cisneros, 165 S.W.3d at 859.  During this time, consent to search a vehicle
can be obtained.  [O]nce
the reason for the stop has been satisfied, the stop may not be used as a
fishing expedition for unrelated criminal activity.  Powell
v. State, 5 S.W.3d 369, 376 (Tex. App.Texarkana 1999, pet. refd) (citing Ohio
v. Robinette, 519 U.S. 33 (1996)); see
also Royer, 460 U.S. at 497.  It is
the States burden to demonstrate that the seizure it seeks to justify was
sufficiently limited in scope and duration to satisfy the conditions of an
investigative seizure.  Royer, 460 U.S. at 500.

            Once the purpose of the initial
detention has been investigated, any continued detention must be based on
specific, articulable facts which, taken together
with rational inferences from those facts, would warrant a person of
reasonable caution in the belief that a continued detention  was justified, i.e., the detainee was or
would soon be engaged in criminal activity. 
Herrera v. State, 80 S.W.3d
283, 288 (Tex. App.Texarkana 2002, pet. refd); Simpson v. State, 29 S.W.3d 324, 327
(Tex. App.Houston [14th Dist.] 2000, pet. refd).  Lieutenant Williams testified to additional
specific, articulable facts which justified the
continued detention.  During the
investigation of the traffic offense, Lieutenant Williams noticed the odor of
marihuana.  Lieutenant Williams testified
Williams told him he had been in Dallas for several days, but the rental
agreement specified the car had been rented the day before in Tennessee.  Although Williams had claimed not to have any
outstanding warrants, Lieutenant Williams conducted a warrant check which
indicated an outstanding warrant for Williams arrest in Tennessee.[19]  Lieutenant Williams had sufficient reasonable
suspicion to continue the detention.[20]  

            Finally, the police did not need
probable cause to conduct a drug dog sniff. 
As noted above, the police had reasonable suspicion for the continued
detention.  Thus, Williams claim that
the only justification for bringing out the drug dog was his denial of consent
is not supported by the record.  The
United States Supreme Court has held that an open air sniff by a drug dog is
not a search within the meaning of the Fourth Amendment.  United
States v. Place, 462 U.S. 696 (1983). 
The trial court did not err in denying Williams motion to suppress.

(11)      Williams Was Not Entitled to an Article 38.23
Instruction

            In his fourth and fifth points of error,
Williams argues he was entitled to a jury instruction on the admissibility of
the contraband pursuant to Tex. Code
Crim. Proc. Ann. art. 38.23.  The
State did not respond to this argument. 
Article 38.23(a) provides:

No
evidence obtained by an officer or other person in violation of any provisions
of the Constitution or laws of the State of Texas, or of the Constitution or
laws of the United States of America, shall be admitted in evidence against the
accused on the trial of any criminal case.

 

Tex. Code Crim. Proc. Ann. art. 38.23. 


            An instruction pursuant to Article
38.23 is mandatory only when there is a factual dispute regarding the legality
of the search.  Pickens v. State, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005); Brooks v. State, 642 S.W.2d 791, 799
(Tex. Crim. App. [Panel Op.] 1982); Malone
v. State, 163 S.W.3d 785, 802 (Tex. App.Texarkana 2005, pet. refd).  To be
entitled to the submission of a jury instruction under Article 38.23(a), a
defendant must establish:

            (1) The evidence heard by the jury
must raise an issue of fact;

            (2) The evidence on that fact must
be affirmatively contested; and

            (3) That contested factual issue
must be material to the lawfulness of the challenged conduct in obtaining the
evidence.

 

Madden v. State, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007)
(citations omitted).

            This case does not present any fact
issue concerning the legality of the search. 
Williams arguments are legal in naturethey concern whether the facts
testified to by Lieutenant Williams are sufficient to constitute reasonable
suspicion or probable cause.  Further,
Williams failed to introduce evidence affirmatively contesting a fact issue.  The only evidence is the uncontradicted
testimony of Lieutenant Williams. 
Williams was not entitled to an instruction.  The trial court did not err.

(12)      The Record Does Not Establish Ineffective
Assistance of Counsel

            Williams sixth point of error is
that his trial counsel rendered ineffective assistance of counsel.  Williams alleges four complaints in the
section of his brief addressing ineffective assistance:  (1) that his trial counsel was not prepared
for trial, (2) that his counsel failed to object to the biased jury and
Judge, (3) that the prosecutor committed prosecutorial misconduct, and (4) that
counsel failed to complain about the trial courts response to a jury
note.  The State argues that the record
does not establish deficient performance or harm.

            We evaluate the effectiveness of
counsel under the standard enunciated in
Strickland v. Washington, 466 U.S. 668 (1984).  See
Hernandez v. State, 726 S.W.2d 53, 5657 (Tex. Crim. App. 1986).  To prevail on his claim, Williams must show
(1) his trial counsels performance fell below an objective standard of
reasonableness, and (2) a reasonable probability exists that, but for trial
counsels errors, the result would have been different.  See
Strickland, 466 U.S. at 68788.  A
reasonable probability is a probability sufficient to undermine confidence in
the outcome.  Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).  It is well-settled that any claim of
ineffective assistance must be firmly founded in the record.  Flowers
v. State, 133 S.W.3d 853, 857 (Tex. App.Beaumont 2004, no pet.); see Thompson v. State, 9 S.W.3d 808, 813
(Tex. Crim. App. 1999)).

            Williams quotes statements made by
trial counsel in connection with his motion for continuance and motion to
withdraw.  Williams trial counsel made
these statements at the pretrial hearing when he orally requested a motion for
continuance and permission to withdraw, at the beginning of voir
dire when trial counsel requested a ruling on his written motions, and at the
beginning of trial, when trial counsel renewed his requests and secured another
adverse ruling.  Williams trial counsel
stated he was not ready for trial because Williams refused to communicate with
him.  Williams does not allege any
conduct on the part of counsel that was deficient or the result of his trial
counsel not being ready for trial. 
Assuming that counsel may not have been fully prepared for trial
(although trial counsels performance at trial indicates otherwise), Williams
has failed to direct this Court to any deficient performance that may have taken
place.  The record does not establish
that trial counsel was ineffective because he was not prepared for trial.

            Williams argues that his trial
counsel should have (but failed) to object to the biased jury and Judge when
the following statements and questions by the trial court were made at the
beginning of voir dire:

            THE COURT:  . . . . Now, some of you have known me a long
time . . . . 

 

            . . . .

 

            How many of you know Ms. Samantha
Crouch?  Shes the prosecutor in this
case.  Several of you do; okay.  Im going to ask you this question.  Do you have such a relationship with Ms.
Crouch or her family that you would not be able to give a fair and impartial
verdict to the defendant as well as the State in this case?  If you could not, please raise your hand.

 

            I take it by your silence everyone
could set that aside, that relationship, and give a fair and impartial verdict.

 

            How many of you know [trial
counsel]?  No one does? . . . . 

 

            . . . .

 

            And how many of you know Curtis Leo
Williams?

 

            I take it by your silence no one
does. . . . 

 

Williams
fails to explain the means by which he perceives the above very routine
questions and comments to be objectionable. 
Trial counsel could have reasonably concluded that any objection to the
above questions would be overruled.  The
record does not establish trial counsels performance was deficient for failing
to object to the above statements and questions.

            Williams argues that his trial
counsel was ineffective because the prosecutor committed prosecutorial
misconduct.  Williams does not expand
this complaint to explain what actions the prosecutor took that supposedly constituted
misconduct and does not explain what action Williams trial counsel should have
taken in response.

            Finally, Williams lodges a complaint
about the trial courts response to a jury question.  During punishment deliberations, the jury
sent the trial court a note asking:  Are
the charges going to be served concurrently or consecutively?  The trial court initially stated it was
intending to respond that the sentences would be served concurrently.  In his brief, Williams quotes the following
objection made by his trial counsel:

            [Defense Counsel]:  Judge, Im not sure its proper for you to
make a comment on that if theyre not supposed to be considering - - I mean, my
preference would be that, Youre bound by the Charge and the instructions
given you.

 

            . . . .

 

            [Defense Counsel]:  I think youre always safe when you say,
Youre bound by the instructions given you with the Charge, and I think
thats a comment and will affect their determination of what the proper
sentence would be in the case at hand.

 

The
trial court stated it would respond:  The
Court cannot instruct you further. 
Please continue your deliberations. 
Williams fails to explain how the above conduct by his trial counsel was
deficient.  The trial court, in essence,
sustained Williams trial counsels objection. 


            Trial counsels reasons for the
objection do not appear in the record.  If
counsels reasons for his conduct do not appear in the record and there is at
least the possibility that the conduct could have been legitimate trial
strategy, we will defer to counsels decisions and deny relief on an
ineffective assistance claim on direct appeal. 
Ortiz v. State, 93 S.W.3d 79,
8889 (Tex. Crim. App. 2002).  We believe
the objection was based on legitimate trial strategy.  If the jury had been informed the sentences
would run concurrently, the jury may have been inclined to assess a more severe
sentence.  Trial counsels objection was
likely based on legitimate trial strategy. 
The record does not establish trial counsels performance was
deficient.  Because the record does not
support the claim of ineffective assistance, Williams sixth point of error is
overruled.

            For
the reasons stated, we affirm.

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date
Submitted:          October 17, 2011

Date
Decided:             November 3, 2011

 

Publish

 











[1]Williams v. State, cause number
06-10-00099-CR.

 





[2]The
record contains an appearance form dated December 31, 2008, which states the
case was reset for February 26, 2009, with jury selection on March 2,
2009.  

 





[3]Williams
appointed counsel later filed a written motion to withdraw, which he brought to
the trial courts attention on March 2, 2010, immediately prior to voir dire.  

 





[4]In
Brooks v. State, 323 S.W.3d 893, 902
(Tex. Crim. App. 2010) (4-1-4 decision), a plurality of the Texas Court of
Criminal Appeals abolished the factual sufficiency review established by Clewis v. State, 922 S.W.2d 126 (Tex. Crim.
App. 1996), and its progeny.  The
plurality and a concurring justice agreed that the Jackson v. Virginia legal sufficiency standard is the only standard
that a reviewing court should apply in determining whether the evidence is
sufficient to support each element of a criminal offense that the State is
required to prove beyond a reasonable doubt. 
Brooks, 323 S.W.3d at 89495,
91213.

 





[5]In
the section of his brief raising legal and factual sufficiency of the evidence,
Williams raises additional issues not raised in his points of error.  In addition, Williams argues (1) the district
attorney lacked authority to prosecute the offense, (2) the State failed to
provide sufficient notice of enhancements, (3) the indictment is void, and (4)
the trial court lacked subject-matter jurisdiction because the State failed to
prove the offense occurred in Hopkins County. 
These issues are multifarious and could be overruled as such.  See
Mays v. State, 318 S.W.3d 368 (Tex. Crim. App. 2010) (a point of error is
multifarious if it embraces more than one specific ground of error).  However, there is no merit to these
complaints and, in the interest of justice, we will address these additional
complaints later in this opinion.  We
note that Williams raises a number of additional complaints in his reply brief
which he did not raise in his appellants brief.  Texas law is well established that new issues
cannot be raised in a reply brief.  State v. Sanchez, 135 S.W.3d 698, 700
(Tex. App.Dallas 2003), affd, 138 S.W.3d 324 (Tex. Crim. App. 2004).  We have not addressed any of the new issues
raised in Williams reply brief.





[6]The
Texas Health and Safety Code currently defines controlled substance as 

 

a
substance, including a drug, an adulterant, and a dilutant,
listed in Schedules I through V or Penalty Groups 1, 1-A, or 2 through 4.  The term includes the aggregate weight of any
mixture, solution, or other substance containing a controlled substance.

 

Tex.
Health & Safety Code Ann. § 481.002(5) (West 2010).  The Code now defines adulterant or dilutant as any material that increases the bulk or
quantity of a controlled substance, regardless of its effect on the chemical
activity of the controlled substance.  Tex. Health & Safety Code Ann. §
481.002(49) (West 2010).  





[7]Williams
signed the rental agreement for the vehicle. 
We note the State had the burden to prove Williams exercised control,
custody, management, or care over the contraband.  See
Evans v. State, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); see also Tex. Penal Code Ann. § 1.07(a)(39) (West 2011).  Mere presence at the location where drugs are
found is insufficient, by itself, to establish actual care, custody, or control
of those drugs.  Evans, 202 S.W.3d at 162.  Presence
or proximity to drugs, however, when combined with other direct or
circumstantial evidence, may be sufficient to establish control, management,
custody, or care if the proof amounts to more than a strong suspicion or
probability.  Id.  Although Williams has
not challenged the evidence linking him to the contraband, the evidence of
affirmative links would be sufficient if such a challenge had been made. 





[8]The
Texas Court of Criminal Appeals has noted Maliks principles apply equally
to the affirmative findings necessary to sustain the imposition of an enhanced
punishment and concluded the sufficiency of the evidence of the enhancements
should be measured by the hypothetically correct jury charge for the
enhancement.  Young v. State, 14 S.W.3d 748, 750 (Tex. Crim. App. 2000) (applying
hypothetically correct jury charge to drug-free-zone enhancement); see Sims v. State, 84 S.W.3d 768, 779 (Tex.
App.Dallas 2002, pet. refd).





[9]Section
12.41 has also been amended since Williams conviction.  Because the amendments are not relevant to
this appeal, we will cite the current statute.

 





[10]Williams
claims, in his fourth point of error, that the judgments cannot be used because
they do not conform to Tex. Code Crim.
Proc. Ann. art. 42.01 (West Supp. 2010). 
We are not aware of any authorityand Williams has not provided anythat
a Tennessee judgment must conform to the form required for Texas judgments.





[11]In
his reply brief, Williams additionally cites Ramirez v. State, 527 S.W.2d 542 (Tex. Crim. App. 1975), and McWilliams v. State, 782 S.W.2d 871
(Tex. Crim. App. 1990).  Both of these
cases hold the State was prohibited from using appellants prior conviction
both as an essential element of the primary offense and to enhance his
punishment.  McWilliams, 782 S.W.2d at 876; Ramirez,
527 S.W.2d at 544.  Neither enhancement
in this case was used as an essential element of the primary offense.  Both McWilliams
and Ramirez are factually
distinguishable from this case. 





[12]We
could take judicial notice that Brashear is located in Western Hopkins
County.  See Edwards v. State, 427
S.W.2d 629, 63334 (Tex. Crim. App. 1968) (taking judicial notice Breckenridge
is in Stephens County).  Because venue is
presumed, it is not necessary for us to take judicial notice of this fact.

 





[13]We
note there are a number of arguments in this case to which the State did not
respond.  The States failure to respond
is to a certain extent understandable. 
These issues are multifarious. 
Further, Williams briefing is extremely difficult to understand and
inadequately explained.  





[14]In
his second point of error, Williams argues the trial court lacked subject-matter
jurisdiction because the indictment was void and the State failed to prove the
offense occurred in Hopkins County.  In
addition, Williams argues the district attorneys office lacked authority to
prosecute him because the indictment was void and the State failed to prove the
offense occurred in Hopkins County.  As
discussed above, we must presume the State established Hopkins County was the
correct venue.  We further note that the
district court had subject-matter jurisdiction over the alleged felonies.  Because the indictment was not void, these
arguments are also overruled.





[15]A
motion for continuance must be in writing. 
Tex. Code Crim. Proc. Ann.
art. 29.03 (West 2006).





[16]In
reviewing the circumstances of each case to determine whether to grant a
continuance, the trial court should weigh the following factors:

 

(1)
the length of the delay requested, (2) whether other continuances were
requested and whether they were denied or granted, (3) the length of time in
which the accuseds counsel had to prepare for trial,
(4) whether another competent attorney was prepared to try the case, (5) the
balanced convenience or inconvenience to the witnesses, the opposing counsel,
and the trial court, (6) whether the delay is for legitimate or contrived
reasons, (7) whether the case was complex or simple, (8) whether a denial of the
motion resulted in some identifiable harm to the defendant, (9) the
quality of legal representation actually provided. 

 

Ex
parte Windham, 634 S.W.2d 718, 720 (Tex. Crim. App. 1982).





[17]Williams
also complains in his fourth point of error that the trial court erred in
denying a jury instruction pursuant to Tex.
Code Crim. Proc. Ann. art. 38.23 (West 2005).  This point of error is multifarious and could
be overruled as such.  See Mays, 318 S.W.3d at 368.

 





[18]We
note that the in-car video recording introduced at trial has not been brought
forward with the record on appeal.  The
court reporter has represented to this Court that the copy of the video
introduced by the State was lost or destroyed. 
The record also contains a letter from Williams trial counsel which
states he has a copy of the video provided to him by the State in his files,
does not believe the video is privileged, and would be happy to make these
available to [the court reporter] for reproduction, and with direction and
instruction by the Court.  The record,
though, has not been supplemented with the video by agreement of the parties or
with a copy determined by the trial court to accurately duplicate with
reasonable certainty the original exhibit. 
See Tex. R. App. P. 34.6(f). 
Although Williams mentions the missing video in his brief, Williams has
not complained about the absence of the video in the appellate record.  Williams brief quotes his attorneys
argument at trial:  

 

The
tape in and of itself and the Court is a little bit at a loss by not being able
to see the tape.  However, there are
material issues that are presented [that] differentiate between the testimony
the Courts heard and what actually occurred and obviously, the tape is best
evidence of that particular indication.

 

At the time, the video had been admitted
into evidence for the purposes of the motion to suppress.  The record is not clear whether the video was
played before the arguments on the motion to suppress.  The trial court later admitted the video into
evidence and it was played for the jury. 
We note that Williams fails to specify what these material issues
are.  Because Williams only raises legal
arguments and does not complain about the missing video, we conclude the
missing video is not necessary to our resolution of this appeal.  See
Tex. R. App. P. 34.6(f)(3).





[19]Lieutenant
Williams estimated he received the warrant check approximately ten minutes
after the initial detention.  

 





[20]The
record does not establish the length of time following the conclusion of the warrant
check and the drug dog sniff.  However,
since Lieutenant Williams had a drug dog with him in his vehicle, it is safe to
assume the continued detention was rather brief.